The first case today is Case No. 18-1164, Mayor F. Pena v. Honeywell International, Inc. Good morning, Members of the Court. Mark Daliardi on behalf of Plaintiff Appellant Myra Pena. Your Honors, I'm here today to ask the Court to reverse the grant of summary judgment in favor of the employer Honeywell. As grounds for our request, we contend that Judge Smith erred in granting summary judgment on the judicial estoppel issue and on the discriminatory discharge and retaliation claims. What you call judicial estoppel, I might call the Cleveland issue. Are we agreed that it's the same issue? Yes. I wish it was the other one, but it is what it is. Your Honor, if it pleases the Court, perhaps I should just focus more on the Cleveland issue, since that seems to be the big issue in this case. Well, you've got three claims at issue. It's your choice what you want to argue. Your Honor, in the interest of candor, I've read this Cleveland decision probably ten times, and I know what it says. It says that the plaintiff must offer a sufficient explanation to resolve the contradiction. I have to admit, I am thoroughly confused as to what exactly a plaintiff has to do to meet that standard, based on what Judge Smith and Judge Allman determined. You know, it's pretty typical of the Supreme Court to make statements like that and then let the Court of Appeals figure out what it is they mean. So you want to give us some guidance on what you think they mean? My interpretation, Judge, is you've got to speak up and explain it somehow. And this is, once again, just my interpretation. I don't think it should involve a case within a case and this exhaustive, excruciating scrutiny that Judge Allman and Judge Smith undertook. Counsel, from your point of view, why would you want to argue that the Supreme Court just means what it said and we shouldn't go beyond the language? And Justice Breyer says that it indicates that this is an explanation that could perhaps go before a jury and they can decide whether it works or not. The first statement she says, this is quoting from Cleveland, we're made in a forum which does not consider the effect that reasonable workplace accommodation would have on the ability to work. I actually thought you were invoking that argument. You make a number of different arguments in your brief, but at one point you invoke that argument and you say, well, the SSDI application doesn't consider the possibility of a reasonable accommodation. That's not an issue in that forum. It is with the ADA claim, and so that's the explanation. Why don't you just invoke that? We did, Your Honor. So why do you say it's such a mystery? You don't know what it was meant. It's just the language. There's nothing mysterious about that language. Sure, because I believe that pain has satisfied the standard, and yet Judge Smith and Judge Ahman are saying, no, you didn't, sorry. They're saying they're wrong. Yeah. They are wrong. Of course, there's another way to read Cleveland, which is that that argument that there is always this true statement that the SSDI application does not have a question about reasonable accommodation. And the Supreme Court could have come up with a flat rule that, therefore, the SSDI application is never inconsistent. But they rejected that point of view, and they said there is a burden of explanation that you have to engage in. Right. And the question is what? Well, you say, right, I'm offering an alternative reading. You can't agree both with me and Judge Lopez. Your Honor, this is what I know. My client did what the Cleveland plaintiff did. My client stated in an affidavit, this form doesn't take into account reasonable accommodations. That's what the Cleveland plaintiff did. That's what my client said. Then my client said, the statement was true at the time I made it, meaning on September 19th, I'm disabled. That's what the Cleveland plaintiff did. So my client met the Cleveland standard. Judge Smith and Judge Allman said no. And they don't really explain why. They just say no reasonable jury could reconcile the differences. Why? Well, you can read Cleveland to say that the mere fact that there's a time difference between the SSDI application and the time the claim of disability is made to the employer, that neither of those result in a per se rule. That nonetheless, despite those two points, which will be true in every single case, you have to come up with an explanation. Okay. Once again, and maybe Mr. McNamara can enlighten us as to what my client could have done to met the standard. I don't think there's anything. She might have given different deposition testimony, and her brief might have not relied on somatoform disorder. Well... Those are two arguments you're going to have to address. That in addition to the SSDI statement, her deposition testimony says that she was just unable to work anywhere on the last day of her employment. Your Honor... There's that, and then there is the separate issue of what you've said in your briefs, that she suffered from somatoform disorder, that that is in fact what the SSDI application acceptance finds, and that both of those go a long way toward resolving the potential ambiguity of the SSDI statement. Your Honor, here's what I don't understand. On the one hand, we have three doctor's letters. We have a client who, a plaintiff, an ADA plaintiff who hired a lawyer to get her job back. We have someone who's desperately trying to get back to work, and when all else fails, when all else fails, then she files for SSDI. And what the court wants to do is to just ignore all that and say, wait a minute, look at your SSDI application. You put down March 8th. That's the only piece of evidence in this case that we're going to fixate on, and we're going to ignore all these Herculean efforts that you undertook to get back to work. Why can't a jury... Okay, so that's a different type of argument. That is, on summary judgment, you have to consider the entire record, and you think they committed error by not doing that. So why couldn't a reasonable jury conclude that she was a qualified disabled person based on the evidence that I just pointed to? Because she said she couldn't do any work at all. She didn't, Your Honor. You look at her deposition testimony. I mean, it's all there. But I'm looking to see if when you can give me an approximate date when you were no longer able to work at all. When I was kicked out of that place, I had to go see the psychiatrist, and that's when I started having panic attacks, and he started giving me new medication and increasing the dose. He said to me, you can no longer work because you were sleeping during the day. But, counsel, it's not just March 8th. There's March 8th, and then there's like the three-month period where she says she's involved in this interactive process. She's trying to come back, and she's saying to them that if you give me this accommodation, I can do everything. I can work. And yet, in the SSDI application, she is saying that as of March 8th and going forward, which includes this period where she's engaged in the interactive process, she's saying I can't do anything. Right. And that's very much at odds with what she's saying. I could do this. Just give me this accommodation, and I could do everything. But that's every case, Your Honor. Isn't that every case where this issue comes up? Isn't it true in every case where the date of the SSDI application is different from the date of the onset of the disability? That's every SSDI case. In other words, if she would have put down September 19th, my date of the onset of my disability is September 19th, which is the date of her application, we wouldn't be here, right? I think that's probably right. Okay, so every single time that the employee puts down their last day of work on an SSDI application, they would be precluded from filing an ADA claim. She was advised by counsel during this period. And let's be honest about that. Not you. Not me. But let's be honest about that. My understanding is they put the last day of work either because they don't know there's an ADA claim, a potential ADA claim, or they're trying to maximize. Well, to use Judge Lopez's language, she and her lawyer are actively engaged in an interactive process, and her lawyer has explicitly made to the company an ADA complaint. She had a lawyer from legal services that was trying to get her accommodation. Then she hired an SSDI lawyer, then she hired me. So she had filed her ADA claim after the SSDI application. My understanding is they put the... Nonetheless, even her legal services lawyer started accusing the company of violating the ADA. They were. The very first lawyer. And they were. Well, you know, maybe if you have someone who's pro se, maybe you look at it a little differently. But this is someone who was advised by counsel during all of these periods. This issue comes up a lot in my practice, so I'd be curious as to what a plaintiff can do to meet the standard. I don't think it's possible based on Judge Allman's and Judge Smith's rulings. Okay, that's a fair point. Thank you. Okay, thank you. Good morning, Your Honors. I'm Neal McNamara, the attorney for the defendant Appley Honeywell International. Okay, so let's take counsel's last point. What else could she have done? Your Honor, I think Magistrate Allman, in his report and recommendation, made very clear under what circumstances the explanation for an inconsistency between an ADA claim and an SSDI application would be. He said on page 15, this is not a case where the plaintiff took the position that she needed a reasonable accommodation to perform work and would not satisfy the requirements of any job without the accommodation. That's not what is going on here, Your Honor. As the court has already pointed out, she has stated in her SSDI application that as of March 8th, she could not work at all. At her deposition, I repeatedly asked her in many different ways, and we had a translator there for her as well, what was the last date that she was unable to work? And she repeatedly said March 8th. But as the court pointed out, after March 8th, her attorney was engaging in the interactive process, and that unfortunately didn't go anywhere because they stopped interacting at one point. I'm just thinking of how she might have given a chance to go before a jury, sort of explain all this, and say, look, I did not appreciate the significance of that March 8th date. I was advised by counsel. I put it down in good faith. What happened was I was traumatized by that termination. I had to take more medication. I got sicker and sicker. And although when I left that job, if they had given me an accommodation, I could have done the job. I could have performed the job in the way that I said I could. But as the months went by, I got sicker and sicker, and I got totally disabled, and I can't do anything now. I mean, that explanation might resonate with the jury. It sounds like a plausible explanation. Why shouldn't she be given a chance to say something like that? Well, for one thing, she didn't say that in her affidavit. That's exactly what I was going to say. She didn't say that at her deposition. Then she signed a post hoc affidavit that tried to reel it back, where she contradicted herself in her deposition testimony. In her briefs, she first blamed her SSDI attorney, throwing him under the bus. Then she, while acknowledging inconsistencies, and Judge Smith pointed out in his decision, she actually admits that there are inconsistencies, but she's trying to convince the court that that's okay, that there's inconsistencies. Not that the inconsistencies can somehow be explained as essentially consistent. Then she blamed me for asking what she claimed were confusing questions at her deposition, and I would argue to the court that I didn't just ask her once and then say, oh, great, I got her to admit it and I'm going to run away. I gave her five, six, seven chances to give me an explanation, and I asked different ways. And each time, she insisted March 8th. Counsel, I'm just looking now at, I guess, yeah, this is a Pallant's brief. These are quotes, I believe, from the deposition, and she's saying things like, this is, for example, the middle of the page, that's page 41 of the brief. When I was kicked out of that place, I had to go see the psychiatrist, and that's when I started having panic attacks. He started giving me new medication, increasing the dose. He said to me, you can no longer work because you are sleeping during the day. Another statement, and the question is, when you say you were kicked out, are you referring to March 8th when you were sent home? From that point on, that's when I started getting worse. Every time the lawyer would tell me that she would send letters and they would decline, it got worse. I mean, that sounds a bit like the scenario that I was describing, where the trauma of getting terminated from that job, things keep getting worse and worse for her, until she really finds she can't do anything. So why does this deposition colloquially preclude the argument that I was suggesting that she might plausibly make before a jury? Because, Your Honor, I would submit that she kept going back to March 8th. She didn't give a full explanation of the kind that you were talking about, and even that, I believe, would not be sufficient. She keeps going back to March 8th, and she was, as Judge Lynch has pointed out, she was, through this entire process, was advised by counsel. So she was advised by counsel during the interactive process. She was advised by counsel during the SSDI application. As Judge Lynch pointed out, Honeywell was on notice as of April, a month after she left, that they were going to be subject to a potential ADA claim. And the plaintiff never changed her position. It is not the kind of situation, as Magistrate Allman pointed out, where she said she couldn't do any work, but if she had an accommodation, she could, like in any position. She was just saying, I can do all these other jobs. I just can't do that particular room, the work in that particular room, which was about 25% of her work. So I think what is at stake here, Your Honors, is really the issue of judicial integrity. What the plaintiff has done here is gone through a number of different explanations. First, as I said, claiming, issuing a post hoc affidavit that contradicts her deposition testimony, then throwing her SSDI attorney under the bus, then trying to blame me for her lack of an explanation. Then in this court, she pivots to the somatiform disorder, which she had never mentioned before, although that was the basis of the SSDI judge's determination. But in the accommodation she was requesting from Honeywell... Do we have in the record her SSDI application? The entire record from the SSDI is not there, but her application where she signed saying March 8th is in there. Does she say at that point somatiform disorder? I don't believe that she said somatiform disorder. I believe the administrative law judge found... Yeah, I know, but when she says she's disabled, does she give a reason in her application? I don't believe so, Your Honor. I'm not sure that it asks you... Yeah, I think it maybe doesn't ask. It simply asks if you're disabled. Yeah, I think it simply asks that. I don't remember seeing a reason, either asked for or given. Why is that label such a problem? Her ongoing complaints were anxiety and depression. These are emotional-type issues. My understanding is that somatiform disorder is also a kind of emotional disorder, which manifests itself with physical symptoms. So it just seems like it may be another label for sort of ongoing emotional issues. So why is that so problematic for her in terms of this judicial estoppel argument? I believe, Your Honor, that there's nothing in the record that gives evidence as to what somatiform disorder is. I took her psychiatrist's deposition, and he never mentioned somatiform. To be honest, I'd never heard of somatiform disorder before I saw the reference to it in the ALJ's decision. So there's nothing in the record. So she didn't mention it, and her psychiatrist didn't mention it? No, Your Honor. Neither one of them did. So if we remove that from the case, at least hypothetically, then you're back to her own deposition testimony? Yes, Your Honor. And her psychiatrist's deposition testimony? Yes. Okay. Do you have other questions? I'm going to ask Judge Stahl if he has questions for either one of you. Well, I do have one question. Can you hear me, first of all? Yes, we can. Thank you. I do have one quick question. If in her SSDI application she had said something like, I could not work after X date because they refused to accommodate me, and that refusal to accommodate me created additional problems for me, which then made me unable to work. But if they had accommodated me, I could have worked. Would that have precluded her from getting SSDI? Well, she got SSDI. No, but if she had said that in her application, would that have precluded her from getting it? I believe if she was stating that if ‑‑ I'm not sure that SSDI takes into account the issue of accommodation one way or another at all. It's simply, are you unable to work? Yes. As of the date of the application. As of the date of the application, exactly, Your Honor. Can you tell me, then, would we be where we are now? I'm sorry, I didn't hear the end of that. Would we be where we are now? If she had ‑‑ If she had done this. I'm not sure. Well, counsel, I mean, I think this is what the appellant was acknowledging. This case comes down largely to the choice of a bad date. I mean, if she had chosen a date, say, outside the ‑‑ say, after the termination, at the end of that so‑called interactive process. If she had chosen a date, the date that she applied for the application, or, again, outside that interactive process period, there would be no judicial estoppel issue. Isn't that correct? Sorry, it would cut off her damages at a certain point. But she did choose that. Right. But that's, I mean, that's really ‑‑ that is the essence of her problem, that date. Is that correct? That is the lynchpin of her argument, of her problem, yes. Judge Stahl, do you have any further questions? No, I do not. Thank you. Thank you. May I address that last point very briefly? Yes, of course. My understanding, I know a lot of SSDI lawyers in Rhode Island, my understanding is they use the last day of work to maximize the amount of the recovery for their client. Yes, they do, but there may be consequences to that. And there are, Your Honor. And so one of my concerns, or one possible unintended consequence is if this judgment gets affirmed, this leaves a whole possibility of malpractice actions against a lot of those SSDI attorneys who don't even know this issue exists, nor could they reasonably expect to know it. Thank you. That's helpful. Thank you both.